CHARLOTTE B. QUIGLEY, PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 109762.   Promulgated March 30, 1943.

*Samuel G. Clawson, Esq.*, and *Peter D. Quigley, Esq.*, for the petitioner.

*John D. Kiley, Esq.*, and *Harold H. Hart, Esq.*, for the respondent.

### OPINION.

TURNER, *Judge:* The respondent determined deficiencies in income tax against the petitioner for 1938 and 1939 in the amounts of $157.22 and $1,849.13.   At the hearing the petitioner conceded the correctness of the determination for 1938.   The only issue remaining for consideration is whether the respondent erred in including in petitioner's taxable income for 1939 the amount of $20,000 paid to her by her brothers in consideration of her releasing them from all further payments to her under an agreement entered into in 1917 in the settlement of a dispute about their father's will.

The proceeding was submitted upon a stipulation of facts and the facts are found as stipulated.

The petitioner is an individual and filed her income tax returns for 1938 and 1939 with the collector at Chicago, Illinois.

The petitioner's father, Herbert E. Bucklen, sometimes hereinafter referred to as the decedent, died testate on or about January 17, 1917. He was survived by his widow, Bertha E. Bucklen, by two sons, Harley R. Bucklen and Herbert E. Bucklen, and by petitioner.

The decedent left a will and a codicil thereto, both of which were executed on October 23, 1916, by which he disposed of his estate,

consisting of real and personal property of an approximate value of $2,000,000. After providing that his widow should have all his personal property and effects contained in the family residence, exclusive of money and securities, and after providing for the payment of certain specific bequests of comparatively small amounts to four persons outside of his family, the balance of his estate was left in trust. To three named trustees the decedent left his investments in a railroad company and a traction company, both of which were Indiana corporations. These investments were designated fund A. The remainder of his estate was left to two named trustees, designated residuary trustees, of which Harley R. Bucklen was one. The residuary trustees were directed to set apart as a separate fund, designated fund B, three specified parcels of real estate situated in Chicago, four parcels of real estate in Elkhart, Indiana, and 25 shares of stock in the State Bank of Chicago. The balance of the residuary estate was designated as fund C. For purposes of accounting and distribution the will directed that fund C be divided into three equal funds, designated funds X, Y, and Z.

The trust with respect to fund A was to continue for a period of ten years from the decedent's death, the income therefrom to be paid over annually into fund C and at the expiration of the ten-year period the property in fund A to be paid into fund C. The will and codicil thereto directed that the income from fund B be paid to petitioner during her life and if upon her death her youngest child had reached 21 years of age the property in the fund was to be distributed equally among her children. The income from fund X was to be paid to decedent's wife during her life and upon her death the property in the fund was to be paid over to whomsoever she might by will direct and appoint, and, in event she made no disposition of the fund by will, then to those persons who would be the decedent's heirs at law had he died on the date of his wife's death. The income from funds Y and Z was to be paid to Harley R. Bucklen and Herbert E. Bucklen, respectively, during their lives and upon the death of either the fund theretofore held for him, fund Y or Z as the case might be, was to be paid to whomsoever he might by will direct and appoint, and, in event he made no disposition of the fund by will, then to the surviving children of such son. The will also contained the following provision:

All payments, deliveries and conveyances herein provided to be made to the persons herein named shall be made only upon the receipt of the respective beneficiaries subscribed with their own hands, and shall not be grantable, transferable or otherwise assignable by anticipation, whether by the voluntary or involuntary act of said beneficiaries, or by operation of law.

The decedent's will with the codicil was duly admitted to probate in the Probate Court of Cook County, Illinois, on February 19, 1917.

The petitioner was dissatisfied with the terms of the will and threatened to bring suit to have it set aside. As a result of negotiations conducted between her and her brothers and a resulting agreement entered into by her and them on May 1, 1917, no suit was ever brought. The petitioner agreed and covenanted that she would not thereafter institute any suit or proceeding to contest the validity of the will upon the agreement of her brothers to pay over to her "from and out of the annual net income" received by them under their father's will amounts sufficient to bring the income of the petitioner from her father's estate to an amount equal to three-fourths of the amount of net income from the said estate thereafter remaining to each of the said brothers. It was also agreed that in the event of the death of Bertha E. Bucklen, the mother of the parties to the agreement, any amounts thereafter received by them as heirs, devisees, or legatees of Bertha E. Bucklen should be taken into account in computing the portion of net income from their father's estate which should be paid over to the petitioner under the said agreement.

The agreement was duly performed by the parties and payments were regularly made to petitioner as therein provided substantially according to its terms until the execution in April 1939 of certain releases hereinafter set forth. The payments so made to petitioner were regularly reported by petitioner in her income tax returns for 1917 to 1939.

All of the assets of fund B, of which the petitioner is the life beneficiary, have been lost through foreclosure or otherwise except one property which in part was in the original portfolio of fund B and in part was purchased with proceeds from the sale of original assets in fund B. Said property since 1935 has not produced and does not now produce sufficient income for any distributions to petitioner and since 1935 there have been no distributions to petitioner from fund B.

On April 14, 1939, the petitioner entered into a release agreement with her brother, Herbert E. Bucklen, which provided as follows:

KNOW ALL MEN BY THESE PRESENTS:

THAT WHEREAS, Harley R. Bucklen, of Chicago, Illinois, and Herbert E. Bucklen, of Elkhart, Indiana, and the undersigned, Charlotte B. Quigley, now of Chicago, Illinois, made and entered into a certain agreement dated May 1st, A. D. 1917, relating to a settlement of the rights and claims of the parties thereto in respect of the estate of Herbert E. Bucklen, deceased; and

WHEREAS, said Herbert E. Bucklen has fully performed and satisfied, to and including the date hereof, all the duties and obligations imposed upon him in and by said agreement; and

WHEREAS, the undersigned, Charlotte B. Quigley, desires to receive and accept the sum of Ten Thousand Dollars ($10,000.00) from said Herbert E. Bucklen, in full satisfaction, discharge and release of all his promises, undertakings, duties, obligations and liabilities required by the terms of said

agreement to be performed or satisfied by him, at any time or times after the date hereof; and

WHEREAS, Peter D. Quigley, the husband of the undersigned, has consented to and approved this instrument and joins herein further to evidence such consent and approval.

Now, THEREFORE, in consideration of the premises and of the sum of Ten Thousand Dollars ($10,000.00), paid to the undersigned, Charlotte B. Quigley, by the said Herbert E. Bucklen, the receipt of which sum is hereby acknowledged, the undersigned, Charlotte B. Quigley, does hereby (1) receive and accept said sum in full satisfaction and discharge of all the promises, undertakings, duties, obligations, and liabilities of said Herbert E. Bucklen, which were made or imposed upon him, in and by said agreement and which by the terms thereof were to be performed or satisfied at any time or times before or after the date hereof; and (2) remise, release and forever discharge said Herbert E. Bucklen, of and from all his promises, undertakings, duties, obligations, debts, and liabilities under or by virtue of said agreement.

This instrument shall be binding upon the heirs, executors, administrators and assigns of the undersigned and of her said husband, and shall inure to the benefit of the heirs, executors and administrators of the said Herbert E. Bucklen.

On April 20, 1939, the petitioner entered into a release agreement with her brother, Harley R. Bucklen, similar in terms to that entered into with Herbert E. Bucklen. After executing the foregoing releases the petitioner delivered them to her respective brothers and upon receipt by her on April 20, 1939, of the payments provided for in said releases, totaling $20,000, she surrendered and delivered to Harley R. Bucklen the instrument of agreement of May 1, 1917.

In her income tax return for 1939 the petitioner did not report as income any part of the $20,000 received from her brothers in that year under the above described circumstances. She did report in schedule G for listing gains and losses from sales or exchanges of property other than capital assets a sale of the May 1, 1917, agreement for $20,000. She did not show any amount as the cost or other basis of the contract, but stated that the contract had been obtained by her in settlement of the estate controversy and that "Loss not claimed because sale to brothers."

In determining the deficiency for 1939 the respondent held that the $20,000 did not represent the proceeds from the sale or exchange of a capital asset, but constituted ordinary income taxable to petitioner, and he included the entire amount in the petitioner's taxable income.

Except for the fact that the payment of $20,000 in 1939 was by agreement to be in lieu of the payments due under the agreement of May 1, 1917, for all subsequent years and not for 1939 alone, we should have a factual situation wholly comparable to that in *Shellabarger* v. *Commissioner*, 38 Fed. (2d) 566. In that case the decedent left the bulk of his estate in trust to pay substantially all of the income to his two daughters. One of the daughters was dissatisfied and threatened to contest the will because of the fact that the income to be received

by her was limited to $100 per month, which by comparison with, the income to be received by her sister was disproportionately small. In consideration for her promise not to contest the will, the sister receiving the larger share of income agreed that the total income from said trusts should be divided between them. The court held that the sister so agreeing was not liable to report as her income that portion of the income from the said trusts which would have come to her under her father's will but which under the said agreement had gone to the less favored sister. The court said:

Under the contract, for the year in question Maud was but an instrumentality or agency for receiving and conveying to Georgia and the bank their contracted proportion of the net income. Maud could not convey the fund itself since she had no title to it. She did not direct the testamentary trustees to pay the half to Georgia and the bank, since the terms of the trusts seemingly required the payments to be made to Maud herself. She did all she reasonably could to invest Georgia and the bank with full right and title to the half.

    \*      \*      \*      \*      \*      \*      \*

While the whole of the net income from the trusts was physically received by Maud, the half did not accrue to her as her income, but on the instant of receiving it she held it in trust for Georgia and the bank, and it was in good faith paid over as received, pursuant to her valid and binding contract.

Petitioner contends that the $20,000 here in question was not income from the estate of her father but money paid by her brothers from their own property as consideration for the surrender by her of their obligation to her under the agreement of May 1, 1917, that her rights under that agreement had been acquired in exchange for the giving up of her right to contest the will of her father, and that had her father died intestate she would have inherited approximately $400,000 and therefore her cost basis for the agreement of her brothers as contained in the instrument of May 1, 1917, was far in excess of the $20,000 received and no gain or income was realized or received by the termination thereof.

Petitioner explains the reporting as income of the amounts received under the agreement from May 1, 1917, to 1939 by reference to *Lyeth* v. *Hoey*, 305 U. S. 188, and that portion of section 22 (b) (3) of the Revenue Act of 1938 [1] which requires the income from property acquired by gift, bequest, devise, or inheritance to be included in gross income. In other words, she takes the position that the agreement of May 1, 1917, was to her, under *Lyeth* v. *Hoey*, property acquired by bequest, devise, or inheritance and that the payments made under that agreement through 1938 represented income from such property, but

---

[1] SEC. 22. GROSS INCOME.

    \*      \*      \*      \*      \*      \*      \*

(b) EXCLUSIONS FROM GROSS INCOME.—The following items shall not be included in gross income and shall be exempt from taxation under this title:

    \*      \*      \*      \*      \*      \*      \*

(3) GIFTS, BEQUESTS, AND DEVISES.—The value of property acquired by gift, bequest, devise, or inheritance (but the income from such property shall be included in gross income).

that the lump sum payment of $20,000 received from her brothers in 1939, in lieu of all subsequent payments under the agreement, represented money received in exchange for property in an amount less than its basis to her.

The mere fact that payments are received from the estate of a decedent by an heir or legatee does not necessarily mean that the payments received are not income to the person receiving them. It depends upon the nature of the payments. In *Lyeth* v. *Hoey* there was a division of corpus between the legatee and the heirs of the decedent and the amount received by the heirs was by way of inheritance within the meaning of section 22 (b) (3), *supra*, and not, therefore, taxable income. In the instant case there was no division or paying over of the corpus, as in *Lyeth* v. *Hoey*, *supra*, but, on the basis of a threat as in that case to contest the will, there was an agreement for the division between the heirs of the income produced and to be produced by the estate, which, under *Irwin* v. *Gavit*, 268 U. S. 161, is not, for income tax purposes, to be classified as property received by inheritance, bequest, or devise under section 22 (b) (3), *supra*, but as taxable income under section 22 (a) of the act. It appears therefore that as in *Lyeth* v. *Hoey* a part of the corpus was received by the parties as heirs of the decedent, the petitioner here, as the heir of her father, received by reason of the agreement of May 1, 1917, income produced by the estate, which income was taxable to her under section 22 (a) and the exception contained in section 22 (b) (3). *Irwin* v. *Gavit*, *supra;* see also *Harrison* v. *Commissioner*, 119 Fed. (2d) 963. The facts clearly show that the payments here in question, namely, the two $10,000 payments made to the petitioner by her brothers in 1939, were to be in lieu of income which she was to receive during her lifetime from her father's estate.

There is no claim or contention that the payments made by the brothers to the petitioner out of the income from their father's estate, which under his will was payable to them, constituted the payment of gratuities either with respect to the payments from 1917 to 1939 or the concluding payments made in 1939, but, to the contrary, both parties concede that the payments were not gratuitous. Neither is there any contention or claim that the agreement of May 1, 1917, was not binding upon the parties and therefore enforceable by the petitioner against her brothers. By neither the will nor the agreement of May 1, 1917, were the brothers or the petitioner to receive payments from the corpus of their father's estate, but only the income therefrom, which income, under *Irwin* v. *Gavit*, *supra*, is taxable to the recipients, and the final payments received by the petitioner, being in lieu of such income, do not lose their character as such. Cf. *Estate of F. S. Bell*, 46 B. T. A. 484, and *Hort* v. *Commissioner*, 313 U. S. 28.

It is noted that the trusts established under the will of the peti-

tioner's father were in the nature of spendthrift trusts in that the will provided that all payments made thereunder to the persons named therein should "be made only upon the receipt of the respective beneficiaries subscribed with their own hands" and should "not be grantable, transferable or otherwise assignable by anticipation" by the said beneficiaries. We do not have here, however, a question of a gift or attempted gift of future income from a spendthrift trust, such as was considered by the court in *Commissioner* v. *Blair*, 83 Fed. (2d) 655. Here, as we have pointed out, there was no gratuity or attempted gratuity. The petitioner's right to the income received was not under or pursuant to the will which established the trusts, but rested on her rights as an heir. The trusts certainly are no more impregnable than the will by which they were established, and, as in *Lyeth* v. *Hoey*, *supra*, the heirs, because of their rights as such, were permitted to receive their inheritance of corpus contrary to the terms of the will, the parties to the settlement in the instant case, on the basis of their rights as heirs of their father, were entitled to and did receive the income produced by his estate in proportions different from those prescribed in his will. We do not therefore have any question as to the right or power of a beneficiary under a spendthrift trust to give away or alienate his interest therein. Similarly *Harrison* v. *Schaffner*, 312 U. S. 579, cited by the petitioner as possibly overruling *Shellabarger* v. *Commissioner*, *supra*, is not in point since it deals with a gratuitous paying over of a specified sum from the income of a trust for a single year and not with the settlement of the rights of heirs.

We find no error in the action of the respondent in his inclusion of the $20,000 received by the petitioner from her brothers in her income for 1939 and, the income not being from the sale or exchange of a capital asset, it is taxable as ordinary income.

*Decision will be entered under Rule 50.*