MARGERY K. MEGARGEL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 110138. Promulgated February 10, 1944.

*Allin H. Pierce, Esq.*, for the petitioner.
*Henry C. Clark, Esq.*, for the respondent.

## OPINION.

DISNEY, *Judge*: With reference to the $120,000 received by the petitioner, only one question is propounded to us by the respective positions taken by the parties: Does the amount represent ordinary income, or gain from a sale of capital assets? The petitioner contends in substance that she sold capital assets and wishes to report income on that basis and deduct the base of such capital assets; while the respondent contends that the income was ordinary, there having been a mere buying of peace by Loft, Inc., and Pepsi-Cola Corporation, having no such relation to the original transaction whereby the petitioner parted with the 95,000 shares of stock in 1933, as to justify application of principles of capital gain to the income received.

The facts are, in substance, that the petitioner transferred the stock in 1933 upon representations which she later considered fraudulently made by Pepsi-Cola and Guth; and that in 1939 she instituted action against Pepsi-Cola, Guth, and Loft, Inc., which had in 1938 acquired practically all, if not all, the stock. On the basis of fraud charged against Guth and Pepsi-Cola, she sought recovery of the stock, or, if not deliverable, its value. Upon a settlement of the action, she received no stock, but was paid, so far as the taxable year 1939 is concerned, $120,000 by Pepsi-Cola, she agreeing to execute to Loft, Inc., and Pepsi-Cola a satisfaction of all claims against them, including those which formed the basis of the action.

*Raytheon Production Corporation*, 1 T. C. 952, is cited by the respondent as authority that the amount received was only ordinary

income, because it was received in settlement of all claims against Loft, Inc., and Pepsi-Cola. The evidence is, however, that the petitioner in fact only had one claim against the defendants. We therefore consider the generality of the instrument, as explained, as ineffective to determine the nature of the income. In the *Raytheon Production* case, the release given was so extremely broad in its terms that we were unable to allocate any particular amount (except for one item) to the capital recovery for which the petitioner was contending. No evidence there appeared to explain the general terms of the release, and it covered parties other than the petitioner. We would, in our opinion, be unjustified in a conclusion that the release here, with the explanation given, was too general to be regarded as identifying itself exclusively with the matter of Pepsi-Cola stock. We therefore turn to consideration of the nature of the income received.

The action filed by the petitioner, and settled, was primarily an assertion of ownership in, and a demand for, the delivery of the stock itself. She prayed for judgment annulling this transfer and the subsequent transfer of the stock, an accounting for dividends, injunction against transfer while the action was pending. and for return of the stock, or, in case of inability of the defendants to return it, that she have judgment for its value. That action was dismissed and money received. The nature and basis of the action show the nature and character of the consideration received upon compromise. *Lyeth* v. *Hoey*, 305 U. S. 188. In that case an heir sought recovery as such, and compromised his claim for consideration received; and it was held that he received such consideration by inheritance, and that it was therefore free from tax. The Court said:

* * * Nor is it questioned that if in any appropriate proceeding, instituted by him as heir, he had recovered judgment for a part of the estate, that part would have been acquired by inheritance within the meaning of the act. We think that the distinction sought to be made between acquisition through such a judgment and acquisition by a compromise agreement in lieu of such a judgment is too formal to be sound, as it disregards the substance of the statutory exemption. It does so, because it disregards the heirship which underlay the compromise, the status which commanded that agreement and was recognized by it. * * *

In *Helvering* v. *Safe Deposit & Trust Co. of Baltimore*, 316 U. S. 56, the Supreme Court repeated with approval its language from the *Lyeth* case: "The distinction sought to be made between acquisition through such a judgment and acquisition by a compromise agreement in lieu of such a judgment is too formal to be sound." This thought is squarely applicable here. Had the petitioner here recovered the stock by judgment, she would have recovered her capital assets. Therefore, the money received upon settlement is of the nature of proceeds of capital assets.

*Charlotte B. Quigley*, 1 T. C. 831, cited by the respondent, is not to the contrary, for there no question of capital gain entered into the compromise, which had to do only with income receivable in the absence of compromise. Nor do we find applicable to the present question *United States* v. *Safety Car Heating & Lighting Co.*, 297 U. S. 88, and several other cases cited by the respondent along the same line, for the reason that none involved capital gain, the only questions presented involving loss of profits. *Helvering* v. *Flaccus Oak Leather Co.*, 313 U. S. 247, involved only the question as to whether money paid by an insurance company under its policy, because of a fire loss, was reportable as capital gain or as ordinary income. Obviously, the opinion is not helpful here. *Harwick* v. *Commissioner*, 133 Fed. (2d) 732, relied upon heavily by the respondent, was affirmed in *Dobson* v. *Commissioner*, 320 U. S. 489, but the ground of affirmance was the conclusion by the Supreme Court approving the theory that the entire income in the *Harwick* case was taxable because the taxpayer had received economic benefit, considering the tax benefit obtained from deductions taken in an earlier year. Decision of the question of whether there was sale of capital assets was therefore not essential to the conclusion reached. It is to be noted, however, that the Supreme Court states: "The Tax Court analyzed the basis of the litigation which produced the recovery in this case * * *," and the conclusion reached constitutes approval of such analysis of the basis of litigation. This is consistent with *Lyeth* v. *Hoey, supra*. Moreover, both *Dobson* v. *Commissioner, supra*, and *Griffiths* v. *Helvering*, 308 U. S. 355, cited by the Circuit Court in the *Harwick* case, involved cases differing in fact from the instant case, for here the petitioner sought recovery of stock, alleging ownership therein, whereas in the *Harwick* and *Griffiths* cases the actions were for damages suffered through fraudulent representation in the purchase of stock; that is, the purchaser alleged that he had paid too much for the stock. Certainly the *Griffiths* case is no authority on the present question, since no issue is found therein having to do with the question of whether the amount received was ordinary income or capital gain. In those cases, therefore, it is plain that the recovery sought by action, and in which compromise was entered, was truly for injury suffered because of fraud, whereas the petitioner here alleged ownership of, sought to recover certain stock, and to annul a fraudulently ordered relinquishment thereof, and then for a consideration compromised the matter, in effect closing the transtion.

This difference in facts and the difference in theory between actions founded in tort and the present petitioner's action for rescission of conveyance are convincing that we should not here follow the con-

clusion of the Circuit Court in the *Harwick* case that the amount received was not capital gain. On the other hand, because of the very difference in facts, we find in the opinion of the Supreme Court in the *Dobson* case assistance in our present problem; for, despite the fact that the petitioners had suffered from fraud in the purchase of stock and compromised a claim of that nature, the Court held, in substance and effect, that to the extent that the petitioners recovered money which they had invested, above the true worth of the purchases made, recovery thereof through compromise was recovery of capital and that (of course after considering the amount realized in the meantime from sales of the purchased stock and the losses allowed, if they were of tax benefit) only above such recovery were they taxable. It follows that the petitioner here, having likewise by compromise recovered the cash equivalent of the stock from which she had parted, made a recovery of capital; for clearly the petitioner, because of fraud (under the theory of her case, as in the *Dobson* case) in parting with her stock, parted with capital no less than did Harwick in investing money under false and fraudulent representations. It is inescapable, in our opinion, when we apply this principle of capital recovery from the *Dobson* case, and apply *Lyeth* v. *Hoey, supra*, that the amount of money received by the petitioner partakes of the nature of capital recovery, and therefore, to that extent, would not be taxable at all, if it were in its nature money, as in the *Dobson* case; but that being, under the *Lyeth* v. *Hoey* case, in its nature property because the equivalent of the property for which suit was brought, it becomes necessary to consider its base. Moreover, the petitioner does not, and in our opinion could not, logically contend that the recovery escapes taxation because in the nature of capital recovery, but takes the view that taxation should be upon the basis of property recovered, with a base to be considered, i. e., that capital gain should be accounted for. This is, in our opinion, the correct view. In the *Dobson case*, the balance, so to speak, received through the compromise, above the amount of capital recovery, was held taxable as ordinary income; but such conclusion does not militate against our view that capital gain was realized here, for therein there was a recovery of money which could not, under *Lyeth* v. *Hoey*, be considered to have any other nature, that is, could not, as here, be considered as the equivalent of capital assets, for the very simple reason that the petitioner there had invested nothing but money in the first place. Therefore it was logically sound that, when the petitioner in that case merely received by way of compromise somewhat more money than he had originally put out, the profit should be ordinary income or gain. Here, where we find the petitioner's investment, that is, the thing which she was allegedly defrauded into giving up, was property, the

principle of *Lyeth* v. *Hoey* requires us to discern that what she recovered was likewise property, and if there was no other element in this case, the *Dobson* decision would require us to hold that the petitioner realized no taxable income by the compromise. However, the compromise worked in substance and proper effect not only a recovery of capital, but a sale thereof in 1939, bringing into effect the law as to taxation of capital gain.

In *Charles S. Davis*, 35 B. T. A. 1001 (reconsidered, 37 B. T. A. 587, but on other grounds not affecting this question), we took a realistic view of a recovery upon a judgment for breach of trust in connection with sale of certain shares of stock, and, in effect, held that the money recovery should be considered as if a sale of the stock had been made and that it constituted corpus of the estate as distinguished from income distributable to beneficiaries under the will.

In *Nichol* v. *United States* (Ct. Cls.), 48 Fed. Supp. 662, the taxpayer sold and received some compensation for stock in 1926, and in 1936 recovered a judgment, including interest, for profits made through fraud by the vendee. In a suit against the collector to recover taxes paid the taxpayer contended that the entire amount should be taxed as capital gain because, though a portion of the recovery was designated as interest, all was in reality damages. The court denied this contention and approved treatment of the principal amount as capital gain, saying: "These additional gains when she finally recovered them in 1936, had the same status as income as that portion of the 1926 payment which represented gain." The petitioner here is seen to be in a very similar situation. In 1933 she too disposed of stock, receiving, however, no consideration, and in 1939 recovered "additional unrealized gains," in the words of the *Nichol* opinion. The case calls for treatment of the petitioner's income here as capital gain.

It is now well settled that recognition of capital gain or loss does not depend upon the existence of usual or stereotyped forms of conveyance. It may rest upon involuntary sales through mortgage foreclosure. *Helvering* v. *Hammel*, 311 U. S. 504; *Electro-Chemical Engraving Co.* v. *Commissioner*, 311 U. S. 513: or upon loss of property through condemnation proceedings by the state or municipality. *Hawaiian Gas Products, Ltd.* v. *Commissioner*, 126 Fed. (2d) 4; *Commissioner* v. *Kieselbach*, 127 Fed. (2d) 359. In *Estate of James N. Collins*, 46 B. T. A. 765 (768), involving purchase of stock under fraudulent representations, later sale thereof and deduction of loss, and the compromise of suit filed thereon at a still later date, we said:

\* \* \* True, the decedent had already sold the stock in 1930 and 1931, but that fact does not require the conclusion that the transactions were completely closed at that time, because the decedent still maintained his right of action against the company. \* \* \*

In affirming our conclusions in this respect, the Supreme Court, discussing the *Collins* case in *Dobson* v. *Commissioner*, *supra*, said:

* * * The Tax Court analyzed the basis of the litigation which produced the recovery in this case and the obvious fact that "regarding the series of transactions as a whole it is apparent that no gain was actually realized." It found that the taxpayer had realized no tax benefits from reporting the transaction in separate years. It said the question under these circumstances was whether the amount the taxpayer recovered in 1939 "constitutes taxable income, even though he realized no economic gain."

The Supreme Court agreed with our conclusions and in that respect we find support for our view here that the petitioner should be taxed only upon the basis of capital gain. The taxpayer herein likewise realized no tax benefit from the transaction in 1933, for the transaction was not reported.

When we consider the series of transactions here involved as a whole, it becomes obvious that they should be regarded as a disposition by sale, of petitioner's Pepsi-Cola stock. We find neither statute nor regulation defining for us the result of such series of circumstances. There was economic gain to the petitioner therefrom under circumstances much as in some of the situations examined in *Dobson* v. *Commissioner*, *supra*. That the recovery, except for consideration of petitioner's base, is capital in nature, is clear from the *Dobson* and *Lyeth* cases, *supra*. Ordinarily, considerations of gain or loss on capital assets recovered must be delayed until such assets are disposed of by sale, exchange, loss, etc. Here, however, petitioner has acquired nothing which can cause taxation in the future, for she acquired no stock or other property, but merely received cash. It is apparent, therefore, that she realized gain, or "economic gain," within the language of the Supreme Court in the *Dobson* case, if her base was less than the amount received. We consider the disposition made when the petitioner first realized anything from her stock, which was in 1939, and that in that year there was sale by the petitioner of capital assets. To hold otherwise would be to blind ourselves to the sum-total effect of the transactions in petitioner's Pepsi-Cola stock. The release for which petitioner received $120,000 in the taxable year and another $120.000 in 1940 settled forever the petitioner's claim to the stock, transfer of which she alleged to be a nullity and ownership in which she asserted to be in herself. Title was affected, and in effect quieted, for the consideration received by petitioner. In our opinion, a sale was effected equally as if she had again signed a transfer of stock. *Avery R. Schiller*, 43 B. T. A. 594, relied upon by the respondent, is not to the contrary, for there the petitioner and other employees of the Public Service Co. had been induced to invest their savings in stock of another associated company. The stock became worthless. We said:

* * * The Public Service Co. apparently felt itself under obligation to reimburse petitioner for his loss * * *. Manifestly the Public Service Co. did

not pay this $3,400 as the consideration for a transfer of the title to the stock. The stock had little, if any value. As a matter of fact no transfer of the title to the stock has been made from petitioner to the Public Service Co. * * *

We pointed out that the stock was only held as collateral to a dividend covenant under which the Public Service Co. should receive the dividends on the stock, but that none had ever been paid. That case, involving primarily a gratuitous reimbursement of an employee, offers no authority in a case as here where title to stock is in substance confirmed and validated for consideration received. We conclude and hold that the amount of $120,000 received in 1939 should be taxed as the proceeds of sale of capital assets.

The next question which arises, therefore, is what amount of base was deductible in making such report of capital gain. Although the evidence shows that the petitioner's husband transferred the stock in question to her in recognition of her contributing to his financial affairs large amounts of money, including the proceeds of a house, a country home, and jewelry and antiques, the respondent takes the view that these were acquired by the husband for the wife, and that therefore they did not belong to her. The evidence does not bear out this theory. It indicates only that the property belonged to her, and we find no facts which would support a different holding. Respondent also points out that petitioner testified that her husband gave the stock to her. Although she did use the word "gave," she immediately testified that he transferred it to her. It is also true that she characterized the 95,000 shares as gifts to her in the petition which she filed. However, her positive testimony is that he gave her the 50,000 shares of National Pepsi-Cola Corporation to repay her for money which she had advanced to him; also that she loaned her husband money and got 50,000 shares of stock in the Pepsi-Cola Co. and that later on, for money which she loaned him, he gave her 45,000 shares. Under this record, uncontradicted, it is clear to us that there was consideration for the transfer of the stock to the petitioner, and that from the amount received by the petitioner there should be deducted whatever basis the petitioner has in such stock. She takes the view that such basis is the value at the time she acquired it, *First National Bank, Philipsburg, Pa.*, 43 B. T. A. 456, and with this view the respondent does not disagree. She contends that such value is $1 per share. The state of the record as to such value is unsatisfactory. About 12,000 shares of stock passed at $1 per share between December 1, 1931, and February 9, 1934, and the money was actually paid. However, it further appears from the record that the stock was not sold on the open market and was not listed on any exchange. There was no trading in the stock and the purchasers of the 9,000 shares were practically all either employed by, or connected in some way with, either Loft, Inc., or Pepsi-Cola. In addition, 10,000 shares were pur-

chased by one W. F. Heller, who was connected with Loft, Inc. In litigation over the matter, Heller contended that the price was $3,000 and the company contended it was $10,000. In the suit which the petitioner filed and compromised, she alleged "From time to time Guth caused shares of the stock of Pepsi-Cola Co. to be issued to various of his friends and associates and acceptance to be made of his friends and associates' subscriptions to stock all at a price or prices and upon terms fixed by him."

In June 1941 the petitioner filed her account of proceedings in the estate of Roy C. Megargel, stating, with reference to the value when received of the stock here involved, that the 50,000 shares of Pepsi-Cola Co. capital stock was believed to have a value of $2.625, though the exact value was unknown. Date of acquisition is given as November 19, 1931. With reference to the 45,000 shares, date of acquisition is given as about May 1933, and it is stated: "Exact value of the foregoing unknown, but believed to be not in excess of $1.00 per share and conceded solely for the purpose of determining the personal claim of your accountant to have been of such value." Therefore. on account of the value ascribed to the Pepsi-Cola Co. stock, $47 625 is deducted by the accountant from her claim of approximately $126.000 against the estate. It thus appears that as to the 50,000 shares received about 1931, the petitioner's present contention varies greatly with her opinion as late as 1941. Apparently, considering the difference in values ascribed by her at that time as between the stock acquired in 1931 and that acquired in 1933, there was a great change in value. The sales made. as she alleged in her petition to friends and associates of Guth can not, although made for cash at $1 per share, be soundly considered as determining the value of the stock. *P. L. Bristol*. 10 B. T. A. 306. No evidence of the intrinsic value of the company was adduced. It is alleged in the petition and admitted in the answer that the petitioner in her return for 1939 deducted $10,103.18 "as the estimated minimum basis of said undivided one-half interest in said stock.'

In June 1941. when she filed her accounting, the petitioner conceded a value of $1 per share as a maximum and solely to determine a deduction from her claim. The language used indicates that she was doubtful whether it had such value. In her return for the taxable year petitioner used a base of $20,206.36 From all of the evidence, we conclude that the 95,000 shares of stock had a basis in value at the time of acquisition, of $20,206.36.

In her return, the petitioner treated the $120.000 received as a sale of one-half interest in the 95.000 shares of stock and deducted one-half of the base for which she contended. Neither the deficiency notice nor the brief of the respondent suggests that, if the amount recovered is considered capital gain, the base and amount recovered shall be treated

otherwise than as petitioner has treated it. Since we have above found the result to be capital gain, we find no error in petitioner's treatment of the matter.

We next consider the $5,000 received upon the transfer by the petitioner in the taxable year of the 50,000 shares of stock in the National Pepsi-Cola Corporation. The petitioner admits that no basis therefor was established and the respondent takes the view that it was surrendered as a part of the same transaction with the settlement of the suit filed by the petitioner. Nothing in the record so indicates, except a recitation that the $5,000 was paid by stockholders of Pepsi-Cola. The $5.000 was received in consideration of the execution of a bill of sale to one William S. Potter, trustee, for 50.000 shares of National Pepsi-Cola stock, which stock was not involved in the suit. We find no fact to involve it in the compromise. We conclude and hold that the $5,000 was received in payment for the stock and was therefore capital gain from sale of stock acquired prior to 1927, as to which no deductible base is shown by the record.

Finally, the petitioner urges the deduction, from the $120.000 received under the settlement, of $42,418.85 expenses incurred in connection with the litigation. We find that they were reasonable and necessary to such litigation. The respondent admits that the expenses would be deductible if the entire proceeds of the settlement were held to constitute taxable income, but contends that if it should be held, as we have held, that the proceeds of the settlement constitute capital gain, such fees and expenses are not deductible. The following language is used by the respondent in his brief:

The point here stressed is that if these expenses were paid merely to obtain a return of capital, they do not come within the language used by Congress as set forth in the foregoing quotation, and in such case would not constitute an allowable deduction.

This view is contrary. in our opinion. to that expressed in the regulations covering section 121 of the Revenue Act of 1942 (amending section 23 of the Internal Revenue Code), allowing deduction of ordinary and necessary expenses of production or collection of income. Section 29.23 (a)–15 of Regulations 111 provides:

The term "income" for the purpose of section 23 (a) (2) comprehends not merely income of the taxable year but also income which the taxpayer has realized in a prior taxable year or may realize in subsequent taxable years; and is not confined to recurring income but applies as well to gains from the disposition of property. For example, if defaulted bonds, the interest from which if received would be includible in income, are purchased with the expectation of realizing capital gain on their resale. even though no current yield thereon is anticipated, ordinary and necessary expenses thereafter incurred in connection therewith are deductible. * * *

Considering this language to be within the intendment of section 121 of the Revenue Act of 1942 (retroactive to 1939), which is general in its terms and does not exclude capital gain from income, we conclude and hold that the expenditures claimed are deductible.

*Decision will be entered under Rule 50.*