A. L. PARKER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 1097.    Promulgated December 29, 1945.

*W. Stuart McCloy, Esq.*, and *Allan Davis, Esq.*, for the petitioner.
*Frank M. Thompson, Jr., Esq.*, for the respondent.

1356

**OPINION.**

TYSON, *Judge*: The first and primary issue herein is whether the transaction whereby petitioner acquired the Cliff Towers Hotel property and cash in compromise settlement of pending litigation based upon his contract with the National Hotel Co. resulted in the receipt of ordinary income taxable in full under section 22 of the Internal Revenue Code, as determined by respondent, or whether such compromise settlement was a "sale or exchange of a capital asset" "held for more than 24 months" within the meaning of section 117 of the Internal Revenue Code, with the consequence that only 50 percent of the gain therefrom is to be included in computing petitioner's net income, as contended by petitioner.

On the first issue, the position of the respondent is: (1) That the rights of petitioner involved in the compromise settlement did not constitute a capital asset, and (2) that if they did constitute such an asset there was no "sale or exchange thereof effectuated by the settlement." Petitioner takes the opposite position. The pertinent provisions of the canceled contract are as follows:

You are to come with this Organization on or about March 1, 1935 and receive as a remuneration for your services Two Hundred ($200.00) Dollars per month cash, a three room suite in the Buccaneer Hotel and meals for yourself, wife and daughter.

It is understood that you will render any services that we might call upon you for and that you will endeavor to develop contracts that would bring into this Organization other hotels. Such contracts as you may develop, we would agree to pay you twenty-five (25%) per cent of the net profits after all operating and fixed charges. This percentage to be in addition to the remuneration mentioned above.

The petitioner, referring to that provision of the above contract whereby the company was to pay him 25 percent of the net profits from hotels brought into the organization through contracts developed by him, contends that his contractual right to share in the profits was a valuable vested property right, capable of being sold or exchanged, and that the settlement and compromise in the litigation of his right to profit from contracts developed falls within the provisions of section 117 (a) and (b) of the Revenue Act of 1938 (which are identical with those of section 117 (a) and (b) of the Internal Revenue Code), whether we regard the petitioner's right as a right to past and future earnings for compensation for services rendered, or as a vested and continuing right in a joint venture to which he contributed services and experience and the company contributed financial resources.

Since the filing of briefs herein this Court has decided the case of *Albert C. Becken, Jr.*, 5 T. C. 498. There the taxpayer entered into a contract, on June 20, 1932, under the terms of which he was to be employed as vice president of a corporation to be organized by the other party to the contract. The contract provided, *inter alia*, that the taxpayer as vice president of the corporation was to receive a salary of $500 per month, and that, in addition to a certain cash bonus to be paid him upon the happening of certain contingencies, he was to receive a minimum cash bonus of $10,000 and be issued $40,000 of the capital stock of the corporation upon its organization. The taxpayer also agreed not to compete with the corporation for a period of five years. In July 1932 the corporation was organized, and the taxpayer went to work for it, beginning then to receive the salary of $500 per month, and he then also received the $10,000 minimum cash bonus. The taxpayer terminated his association with the corporation in October 1932 and never received the $40,000 in stock. Thereafter the taxpayer brought suit for specific performance of the contract, alleging that he had performed on his part, and, among other things, asking that there be transferred and delivered to him the $40,000 of stock or its equivalent in cash if it could not be delivered. After the answer to the complaint was filed the trial court entered a decree dismissing the suit. An appeal was taken and while the appeal was pending the parties executed a settlement agreement under which

$17,000 was paid the taxpayer. The contention of the taxpayer in the proceeding before this Court was that the $17,000 was to be treated as a capital gain. Respondent's contention was "that whatever right petitioner had stems from an employment contract and that payments received in compromise settlement of such contracts constitute ordinary income." In passing on these contentions, and an apparent treatment by the taxpayer as resting his right to the $40,000 of stock in a contract separate and apart from the other parts of the contract under which the petitioner was employed, we held that the $17,000 constituted ordinary income rather than a capital gain, saying:

* * * Just as in the case of the $10,000 cash bonus, the agreement to issue the stock is attributable to petitioner's undertaking to work for the new corporation, or to his undertaking not to compete for a period of five years, or both. If it is attributable to the agreement to work, the value of the stock when received would be ordinary income, *Walter P. Coleman*, 8 B. T. A. 1126; * * *

We can not say that petitioner ever "owned" a capital asset of which he could dispose. The only judicial determination of which there is evidence in the record, as to his right to the stock, was against him. Be that as it may, however, if the stock, when and if acquired, represented compensation either for services or for an agreement not to compete, then upon the principle of *Lyeth* v. *Hoey*, 305 U. S. 188, and *Margery K. Megargel*, 3 T. C. 238 (on which petitioner most strongly relies), and other similar cases, that the "nature and basis of the action [here the specific performance suit] show the nature and character of the consideration received upon compromise," the sum of $17,000 stands upon the same footing as ordinary income.

The "nature and basis of the action" which the petitioner here brought in the District Court of the United States was to recover from the defendants a 25 percent interest in the profits theretofore realized and thereafter as realized, of the four hotels under petitioner's contract of employment with the National Hotel Co. under which he rendered personal services in bringing the four hotels into the organization of that company; and this "nature and basis of the action" shows also "the nature and character of the consideration received upon compromise," as was true in the cited case. We think that case is controlling here and under its authority we hold that respondent did not err, as claimed in the first issue, and that the property received by petitioner under the settlement agreement was ordinary income and taxable as such. See also *Hort* v. *Commissioner*, 313 U. S. 28; *Doyle* v. *Commissioner*, 102 Fed. (2d) 86, affirming 37 B. T. A. 323; *Escher* v. *Commissioner*, 78 Fed. (2d) 815. Cf. *Thurlow E. McFall*, 34 B. T. A. 108.

Petitioner cites in support of his position, *Hall* v. *Burnet*, 54 Fed. (2d) 443; *Walter L. Ross*, 30 B. T. A. 496; aff'd., 83 Fed. (2d) 18; and *Margery K. Megargel*, 3 T. C. 238. In *Hall* v. *Burnet* the question was whether income already earned by the taxpayer as commissions on renewal premiums on life insurance written by him was taxable to

him or his wife, to whom he had assigned his right to such commissions. In *Walter L. Ross*, the question was whether income already earned by the taxpayer, but which by subsequent agreement was to be paid in the future, was taxable to the taxpayer rather than to a party to whom he had assigned his right under the agreement. These cases are so clearly distinguishable as to be inapplicable here. *Margery K. Megargel, supra,* would seem to support our conclusion, as it did the conclusion in the *Albert C. Becken, Jr., supra,* case; but if it does not, it is clearly distinguishable because there "the nature and basis of the action" was for the recovery of stock or its value if it could not be recovered, in a corporation—clearly a capital asset.

The contract clearly did not create a joint venture. It conferred upon the petitioner the right to a percentage of the net profits, but this is not of itself enough to create the relationship. The petitioner was employed to develop contracts that would bring into the organization other hotels, and no contract was to be entered into on behalf of the company until it was submitted to and approved by the board of directors. Nothing is contained in the contract to indicate that he was to have any control over or proprietary interest in the contracts or properties acquired, or to share the risks and burdens of operating the hotels. His interest was limited to a share of the net profits of hotels acquired by the company through his efforts and which were to be owned or operated by it. Rather than indicating a joint venture, the contract contains terms showing that the parties never intended to create the relationship of joint venturers. As we interpret it, it was an ordinary contract of employment with a provision for payment of a stated percentage of profits to the petitioner for services rendered to the company. And it is to be noted that the company, in so far as this record shows, never caused a partnership return to be filed treating the petitioner as a joint venturer and that petitioner never filed a return as a member of a partnership or joint venture. See sec. 181, 182, 183, 187, and 901 (a) (3), Revenue Act of 1938. We had before us in *Schermerhorn Oil Corporation,* 46 B. T. A. 151, a contract similar in terms to the one here involved, and we rejected the contention there made that it created a joint venture giving rise to a property interest in the person whose services were employed and held that the contract was a contract of employment and that the percentage of the net profits was paid for services rendered. The case is not distinguishable in its facts from the present one, and it disposes of the petitioner's contention that his interest was that of joint venturer. See also *Donald P. Oak,* 46 B. T. A. 265, and *E. L. Connelly,* 46 B. T. A. 222.

The cases involving joint ventures cited by petitioner are not in point.

In *McCausey* v. *Burnet,* 50 Fed. (2d) 491, the taxpayer was a member of a syndicate formed to purchase stock, and petitioner contributed

his share of the purchase price. In deciding certain other issues the court, without assigning reasons therefor, treated the taxpayer as a joint venturer, as he so obviously was that no contention seems to have been made on that point to the contrary.

In *Alger Melton*, 7 B. T. A. 717, it was decided that the taxpayer was engaged in a joint venture rather than a partnership where he with three associates had bought and operated a lease, for the purchase price and operation of which they each made their respective contributions.

In neither of these cases was there a question with regard to the taxpayer's having rendered services for which he was to receive compensation; and in each the taxpayer shared in contributing to the purchase price of property bought and had an investment therein.

The second issue is as to the value to be placed on the Cliff Towers Hotel property at the time it was received by petitioner in the compromise settlement. In his petition he asserts that the respondent erred in holding that "the money and fair market value of other property received by the petitioner from the settlement" of the litigation was $72,978, and in not holding that such value was $44,228. As shown in our findings, $65,000 in money was received by petitioner in addition to the hotel property, so that the valuation of $72,978 complained of in the petition necessarily includes the $65,000 cash, leaving only $7,978 as the valuation of the hotel property. In asking for a valuation of $44,228 for both the money and "other property received" petitioner apparently seeks to exclude any value whatsoever for the hotel property and to also ignore part of the $65,000 cash received. But, however that may be, we find no proof in the record that the value of the hotel property was $44,228 when received by petitioner rather than the value which was determined by the respondent. The testimony of petitioner is the only evidence with regard to the value of that property and is confusing, but the final effect thereof is his statement that "I believe there was an equity there, but to what extent it was, it would be rather difficult to say." Under all the circumstances, we find no reason for determining that respondent erred in the valuation he placed on the "money" and "other property received by the petitioner as a result of the settlement" of the litigation, and the respondent's determination with reference thereto is therefore approved.

With regard to the gain (and in the petition it is asserted there was a short term capital gain of $9,600) realized by petitioner from the sale or exchange of his stock in the Cliff Towers Hotel property, involved in the third issue, we are unable to say that respondent made an erroneous determination with respect thereto. This corporation was organized by petitioner as an "operating company" for the hotel property and he received its entire issue of capital stock of $7,500.

At an unspecified date he exchanged half of this stock for 100 shares of stock in the National Hotel Co. Later, also at an unspecified date, he sold the remaining half of the stock for $12,500 and 6¼ shares of stock in the Federal Underwriters & Accident Insurance Co. The amount of gain derived by petitioner from either of these transactions necessarily depends on his cost basis of the stock sold or exchanged. This cost basis we are unable to determine, since the consideration, if any, passing from petitioner to the corporation in payment for the issuance of stock to him is not disclosed by the record. So far as the record shows, title to the hotel property remained in petitioner and the newly formed corporation was organized merely for the purpose of operating the hotel, apparently under some contract arrangement with petitioner.

In as much as the corporation was "an operating company" for the Cliff Towers Hotel, we would not be justified in assuming that petitioner transferred that hotel, or his equity therein, to the corporation as consideration for its stock and consequently the value of the hotel property is immaterial as to this issue. However, if it could be assumed that the hotel property was transferred to the corporation in payment for its stock and that the fair market value thereof constituted the basis of the stock, we still would be unable to determine a basis for that stock because the only evidence as to the value of the hotel property or petitioner's equity therein is the testimony of petitioner which is referred to in our consideration of the second issue. In connection with this issue, it may be observed that petitioner's return is not in evidence and the deficiency notice does not indicate to what extent, if at all, the transactions of petitioner with regard to his stock in the Cliff Towers Hotel Co. entered into the determination of the deficiency. Whatever determination was made by respondent on this issue, if any, is approved.

*Decision will be entered under Rule 50.*