GEORGIA LEARY NEILL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1708–63. Filed July 24, 1964.

*David L. Tisinger*, for the petitioner.
*Harold Friedman*, for the respondent.

### OPINION

SCOTT, *Judge:* Respondent determined a deficiency in petitioner's income tax for the calendar year 1961 in the amount of $2,039.88.

One of the issues raised by the pleadings has been disposed of by agreement of the parties, leaving for our decision whether petitioner is entitled to deduct a legal fee in the amount of $3,000 paid in connection with a lawsuit against her former husband seeking a redivision of property which was divided pursuant to an allegedly void judgment granting petitioner a divorce.

All of the facts have been stipulated and are found accordingly.

Petitioner, an unmarried individual residing in Austin, Tex., filed her Federal income tax return for the calendar year 1961 with the district director of internal revenue at Austin, Tex.

During the year 1961 petitioner paid $3,000 to an attorney in Austin, Tex., in connection with a lawsuit previously filed by another attorney for petitioner in the 98th District Court of Travis County, Tex. The document filed by petitioner in that court, entitled "Original Petition," alleged in part as follows:

The defendants are: JAMES PALMER NEILL (sometimes referred to herein as Neill), * * * and MRS GERALDINE C. JOHNSON NEILL, who claims to be the present lawful wife of defendant, James Palmer Neill, * * *

This suit is brought as a bill of review in equity:

(1) to review, to vacate and cancel as void in whole or in part, and to modify and reform, a purported final judgment of the 98th District Court of Travis County, Texas, dated and filed April 20, 1953, in Cause No. 95,121, entitled Georgia Leary Neill vs. James P. Neill, wherein it was purportedly decreed (among other things) that plaintiff therein was granted a divorce from defendant therein, and their bonds of matrimony were dissolved, and it was further purportedly decreed that certain specified properties acquired during their marriage were divided and set aside to plaintiff and defendant, respectively, as the separate properties of each, and that each party was divested of all right, title, and interest in and to the properties thereby set aside to the other; and

(2) to vacate and cancel the property settlement contract, dated March 16, 1953, executed by and between Georgia L. Neill and James P. Neill, insofar as such contract: (a) provides that the shares of capital stock of Western Pipe Line Constructors, Inc., then in the name of James P. Neill, are or were his separate property, and (b) divides and sets aside specified community properties to the respective parties as the separate properties of each, and divests each party of all right, title, and interest in and to the properties set aside to the other party.

The provisions of the aforesaid judgment are incorporated herein by reference for all pertinent purposes; and a true copy of such contract is attached hereto, marked "Exhibit 1", and incorporated herein by reference for all pertinent purposes.

1.

Plaintiff alleges that the aforesaid purported final judgement is utterly void in its entirety because it was made, entered, and filed prematurely at a time when the Court did not have lawful power or authority to do so. The original petition for plaintiff was filed in said cause on March 24, 1953, and said purported judgment was made and entered on April 20, 1953, within less than thirty (30) days thereafter, in violation of the mandatory provisions of Article 4632, Revised Civil Statutes of Texas of 1925, that "Suit shall not be heard or divorce granted before the expiration of thirty days after the same is filed."

\*      \*      \*      \*      \*      \*      \*

Plaintiff further alleges that the aforesaid provisions of said property settlement contract (providing that the shares of capital stock of Western Pipe Line Constructors, Inc., then in the name of James P. Neill, were his separate property, and dividing and setting aside specified community properties to the respective parties thereto) were incorporated in the aforesaid purported final judgment of the Court, as provided in said contract. Plaintiff says that such provisions of the contract and of the purported judgment dated April 20, 1953, were and are inequitable and grossly unfair to plaintiff, and should be set aside and cancelled by the Court, because plaintiff was fraudulently deceived, misled, imposed upon, and induced by Neill and his attorney to execute said contract and agree to such provisions, \* \* \*

\*      \*      \*      \*      \*      \*      \*

\* \* \* and that on March 10, 1950, Neill issued a check on his said account to Western Pipe Line Constructors, Inc., in the amount of $27,300.00 in payment for thirty-nine (39%) percent of the shares of stock of such corporation (which had been organized as a Delaware corporation on March 7, 1950), and such check was honored and paid in due course, and Neill received a number of shares unknown to plaintiff but well known to Neill amounting to thirty-nine

(39%) percent of the capital stock of said corporation. The funds which purchased and paid for such stock were community funds acquired by the joint efforts of plaintiff and Neill, and such stock constituted community property owned jointly and equally by plaintiff and Neill, and did not constitute the separate property or estate of Neill.

In addition, the Western Pipe Line Constructors, Inc., was a closed corporation, all or practically all of the capital stock thereof being owned and controlled by only three persons, namely Neill, E. G. Morrison, and Charles S. LeNoir, Neill being President and Morrison being Secretary-Treasurer of the corporation; and all of the business time, efforts, and activities of Neill were devoted exclusively to the business affairs of the corporation and subsidiary businesses from January, 1951, until its dissolution in December, 1954.

### 13.

Plaintiff has good reason to believe, does believe, and alleges that the shares of capital stock of Western Pipe Line Constructors, Inc., in the name of James P. Neill, which were set aside to Neill as his separate property by said property settlement contract and said purported final judgment of April 20, 1953, had a reasonable cash market value of not less than $500,000.00 on the dates of said contract and said purported final judgment; and that when Western Pipe Line Constructors, Inc., was dissolved and surrendered its permit to do business in Texas on December 28, 1954, Neill received monies or properties having a gross reasonable cash market value of approximately $475,000.00 which had a net value of approximately $360,000.00 after payment of the federal capital gains tax thereon. Said stock shares and the value realized therefrom was retained, converted, and used by Neill for his own use and benefit, and he has failed and refused and still fails and refuses to pay to plaintiff her undivided one-half part thereof in the amount of $180,000.00, or any portion thereof.

### 14.

Likewise, in finding No. 6 in said purported judgment dated April 20, 1953, which was prepared by the attorney for Neill from data furnished by or in behalf of Neill, it is recited in substance that Neill owned additional separate property of value not to exceed $100,000.00, apart from the above mentioned shares of stock of Western Pipe Line Constructors, Inc. None of such property has been made known to plaintiff or to the Court by Neill, and only Neill or his accountant or other representative has knowledge concerning the time and manner such property was acquired, its nature, extent, location, and actual value.

\*        \*        \*        \*        \*        \*        \*

### 15.

Plaintiff alleges that this Court should enter forthwith an order requiring Neill to make and file herein, by a day and time certain to be fixed by the Court, a sworn itemized inventory of all properties of every nature and description owned by Neill or in which he had or claimed any interest on April 20, 1953, showing with particularity the nature of such properties, the time and manner of acquisition, the location, and the value thereof; in addition, that Neill be ordered forthwith by the Court to make and file herein, by a day and time certain to be fixed by the Court, a sworn itemized inventory of all properties of every nature and description owned by Neill or in which he has or claims any interest on the date this petition is filed, showing with particularity the nature of such properties, the time and manner of acquisition, the location, and the value thereof; in addition, that Neill be ordered forthwith by the Court to make

and file herein a full and complete accounting of all properties or interests therein disposed of by him and all properties acquired by him between April 20, 1953, and this date, showing fully the nature of such properties, the time and manner of sale or acquisition, the value received or paid therefor, and all additional data and information concerning such property as may be necessary to make a full, complete, and true accounting therefor to the Court herein.

16.

Plaintiff says that she is ready and willing to account fully to the Court for all of the properties and monies that she has received in accordance with said property settlement contract and said purported final judgment dated April 20, 1953, and hereby offers to do whatever the Court may deem to be just and equitable for plaintiff to do in the premises.

WHEREFORE, premises considered, plaintiff prays as follows:

(1) that each of the defendants be duly and properly cited and required to appear and answer herein as provided by law;

(2) that the Court enter forthwith an order requiring and directing defendant James Palmer Neill, to file herein on a day certain to be fixed by the Court sworn itemized inventories and an accounting as set forth in paragraph No. 15, above;

(3) alternatively, that the Court appoint a competent, disinterested accountant authorized to examine and audit all records and data of Neill and to file herein a written report of such audit, showing the information described and set forth in paragraph No. 15 above; and

(4) that upon final hearing hereof the purported final judgment of the Court dated April 20, 1953, in Cause No. 95,121, in the 98th District Court of Travis County, Texas, be set aside as wholly void, and that the Court enter a new judgment granting plaintiff a lawful divorce from defendant, James Palmer Neill, on the grounds of cruel treatment, awarding plaintiff custody of their minor children, and making such division of the properties acquired during the marriage of plaintiff and Neill as the Court may deem equitable and proper, but equal to at least one-half of the value of all community properties of plaintiff and Neill, and that the Court enter all such orders as shall secure and protect plaintiff in receiving such properties or the monetary value thereof;

(5) that the property settlement contract dated March 16, 1953, executed by plaintiff and Neill be cancelled and set aside insofar as it provides that the shares of capital stock of Western Pipe Line Constructors, Inc., in the name of James P. Neill, or the proceeds therefrom, were or are his separate property, and insofar as it divides and sets aside specified community properties to the respective parties as the separate properties of each and divests each party of all right, title, and interest in and to the properties thereby set aside to the other; and

(6) that plaintiff receive such other orders and relief to which she may be justly entitled herein.

In addition to provisions for division of property and creation of a trust from certain community property with the income therefrom to be paid to petitioner for her life, the agreement of March 15, 1953, between petitioner and her former husband provided in part:

Second party has this day paid to first party the sum of Thirteen Hundred Dollars ($1300.00) in cash, the receipt whereof is hereby acknowledged by first party.

Second party agrees to pay to first party the sum of Thirteen Hundred Dollars ($1300.00) on or before the first day of _____, 1953, and to pay

her a like amount on or before the first day of each succeeding month up to and including the first day of _____, 1956; and thereafter to pay her $500.00 a month on or before the first day of each succeeding month up to and including the first day of _____, 1964.

Petitioner on her income tax return for the calendar year 1961 deducted the $3,000 attorney fee which she had paid during that year and respondent disallowed this deduction with the following explanation:

> You deducted legal expense in the amount of $3,000.00 which you incurred in connection with acquiring title to property. Legal expense incurred in securing title to property is a capital expenditure and would increase the basis in the property. * * *

Petitioner takes the position that the attorney's fee which she seeks to deduct was incurred in connection with litigation to recover money or property and is therefore deductible under section 212(2) of the Internal Revenue Code of 1954 and the regulations issued pursuant thereto,[1] relying upon *Hochschild* v. *Commissioner*, 161 F. 2d 817 (C.A. 2, 1947), reversing 7 T.C. 81 (1946); *Margery K. Megarel*, 3 T.C. 238 (1944); and *Walter S. Heller*, 2 T.C. 371 (1943), affd. 147 F. 2d 376 (C.A. 9, 1945), certiorari denied 325 U.S. 868.

Respondent's primary contention is that the attorney's fee was paid in connection with a suit which grew out of a personal or family matter

---

[1] SEC. 212 [I.R.C. 1954]. EXPENSES FOR PRODUCTION OF INCOME.

In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—

(1) for the production or collection of income;

(2), for the management, conservation, or maintenance of property held for the production of income; or

[All references are to the Internal Revenue Code of 1954, unless otherwise indicated.]

Sec. 1.212–1 [Income Tax Regs.] Nontrade or nonbusiness expenses.

(a) An expense may be deducted under section 212 only if—

(1) It has been paid or incurred by the taxpayer during the taxable year (i) for the production or collection of income which, if and when realized, will be required to be included in income for Federal income tax purposes, or (ii) for the management, conservation, or maintenance of property held for the production of such income, or (iii) in connection with the determination, collection, or refund of any tax; and

(2) It is an ordinary and necessary expense for any of the purposes stated in subparagraph (1) of this paragraph.

(b) The term "income" for the purpose of section 212 includes not merely income of the taxable year but also income which the taxpayer has realized in a prior taxable year or may realize in subsequent taxable years; and is not confined to recurring income but applies as well to gains from the disposition of property. For example, if defaulted bonds, the interest from which if received would be includible in income, are purchased with the expectation of realizing capital gain on their resale, even though no current yield thereon is anticipated, ordinary and necessary expenses thereafter paid or incurred in connection with such bonds are deductible. Similarly, ordinary and necessary expenses paid or incurred in the management, conservation, or maintenance of a building devoted to rental purposes are deductible notwithstanding that there is actually no income therefrom in the taxable year, and regardless of the manner in which or the purpose for which the property in question was acquired. Expenses paid or incurred in managing, conserving, or maintaining property held for investment may be deductible under section 212 even though the property is not currently productive and there is no likelihood that the property will be sold at a profit or will otherwise be productive of income and even though the property is held merely to minimize a loss with respect thereto.

and therefore is a personal living or family expense within the meaning of section 262. Respondent relies on *United States* v. *Gilmore*, 372 U.S. 39 (1963), and *United States* v. *Patrick*, 372 U.S. 53 (1963). In the alternative respondent contends that this attorney's fee is not deductible because the expenditure was not for the "management, conservation, or maintenance of property held for the production of income" but was for the acquisition of or the perfecting of title to property.

In the recent case of *Ruth K. Wild*, 42 T.C. 706 (1964), we held that an amount paid by a wife to her attorney for negotiating an agreement and prosecuting a court action to obtain alimony which was includable in her gross income was deductible under section 212(1) as an ordinary and necessary expense paid for the production or collection of income. We distinguished the cases of *United States* v. *Gilmore*, *supra*, and *United States* v. *Patrick*, *supra*, on the grounds that those cases involved payments of attorneys' fees by husbands "in resisting their wives' claims to their income-producing property incident to divorce proceedings," which deductions were sought to be justified under section 212(2) as expenses incurred for the management, conservation, or maintenance of property held for the production of income.

Although the instant case involves a claimed deduction of an attorney's fee paid by a wife, the attorney's fee was not paid in connection with an attempt to obtain alimony which would, if collected, be income as in *Ruth K. Wild*, *supra*, or back payments of alimony as in *Estate of Rebecca Edelman*, 38 T.C. 972, 979 (1963), referred to in the *Ruth K. Wild* case.[2] Petitioner was not by her suit attempting to have the alimony provisions of the contract with her husband set aside but only those provisions of that contract dealing with the division of property. Therefore, the claimed deduction for the attorney's fee here involved would not fall within the provisions of section 212(1) and petitioner does not contend that it would but rather contends that it comes within the provisions of section 212(2). Petitioner attempts to distinguish *United States* v. *Gilmore*, *supra*, and *United States* v. *Patrick*, *supra*, on the ground that those cases involved the defense by a husband of a claim against specific property and that she "does not in her litigation defend a title; she seeks to *recover* an award of money *or* property." Nevertheless petitioner's claim to the property she is seeking to acquire grew out of her marital relationship and divorce. Her petition in the Travis County, Tex., court deals primarily with her rights to property which she alleges was, prior to her divorce, community property. The case of *United*

---

[2] The attorneys' fees in *Ruth K. Wild*, 42 T.C. 706 (1964), totaled $10,000, but the $4,000 attributable to services for "Divorce, custody, property settlement" were not in issue.

*States* v. *Gilmore, supra,* involved attorneys' fees expended by a husband in defense of his wife's community property claims under California law. The Court there held that the expenses of the defense of such claims were not deductible even though had the wife's contention been fully sustained, under California law, she might have been awarded all the community property.

The primary factual differences in the instant case and the *Gilmore* and *Patrick* cases are that the attorney's fee here involved was paid by the wife and not the husband and was paid to prosecute an action to set aside a contract incident to a prior divorce decree and not in the prosecution of the original divorce action. These differences are not substantive and we hold that the attorney's fee paid by petitioner is not deductible on the authority of *United States* v. *Gilmore, supra,* and *United States* v. *Patrick, supra.*

If the factual differences between the instant case and the *Gilmore* and *Patrick* cases did constitute a legal distinction, we nevertheless would sustain respondent's disallowance of the claimed deduction of the attorney's fee since the amount was paid to prosecute a suit for the acquisition of property. Legal fees paid in the acquisition of property are capital expenditures not deductible under section 212(2). *United States* v. *St. Joe Paper Co.,* 284 F. 2d 430 (C.A. 5, 1960). The law is well settled that expenses of litigation which has as its primary purpose the defense or the perfecting of title to property are capital expenditures which constitute a part of the cost of the property and are not deductible expenses. *Lewis* v. *Commissioner,* 253 F. 2d 821, 827 (C.A. 2, 1958), affirming 27 T.C. 158 (1956), and *James C. Coughlin,* 3 T.C. 420 (1944). In some instances it is difficult to ascertain whether the primary purpose of litigation is in defense or protection of title to property or is for the management, conservation, or maintenance of income-producing property. See *Industrial Aggregate Co.* v. *United States,* 284 F. 2d 639, 645, fn. 10 (C.A. 8, 1960). This determination must be made from the evidence in each case. In the instant case the evidence consists entirely of stipulated facts and exhibits. Petitioner's petition in the 98th District Court of Travis County, Tex., is a suit to acquire property which was awarded to her husband in the divorce action or if such property has been converted into other property, the substitute property or money received for the property. Insofar as the evidence shows no trial has been had, nor any determination made, of the issues raised by petitioner in her suit in the Travis County, Tex., court. If petitioner's recovery were of money, there is nothing in this record to show that such money would constitute to any extent either taxable income or taxable capital gains. On the basis of the evidence here offered we hold that the primary purpose of the suit with respect to which the attorney's fee of $3,000 was

paid was the acquisition by petitioner of a capital asset and therefore this expenditure is not deductible under section 212(2). The cases relied upon by petitioner are distinguishable on their facts.

Since respondent has conceded another issue in this case,

*Decision will be entered under Rule 50.*