ESTATE of Herman KAHN, Deceased, et al., Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellee.

Joseph E. BROOKS and Alice K. Brooks, Appellees,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellant.

Monroe J. WEINTRAUB and Carol Weintraub, Appellees,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellant.

Nos. 1095–1097, Dockets 73–2500, 74–1013, 74–1015.

United States Court of Appeals, Second Circuit.

Argued May 20, 1974.

Decided June 17, 1974.

John S. Nolan, Washington, D. C. (Miller & Chevalier, Washington, D. C., Robert L. Moore, II, and F. Brook Voght, Washington, D. C., of counsel), for appellants.

John A. Townsend, Atty., Tax Div., Dept. of Justice, Washington, D. C. (Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks and Jonathan S. Cohen, Attys., Tax Div., Dept. of Justice, Washington, D. C., of counsel), for appellee Commissioner.

Before SMITH and TIMBERS, Circuit Judges, and TYLER,* District Judge.

**J. JOSEPH SMITH, Circuit Judge:**

This is an appeal from a decision in favor of the Commissioner of Internal Revenue by the Tax Court, Goffe, *Judge.* The Tax Court held taxpayer's joint venture, H. Kahn & Associates, was in reality a proprietorship, and that therefore all of its income was taxable to Kahn;[1] that the venture's principal assets were "property held . . . primarily for sale . . . in the ordinary course of business" and therefore not entitled to capital gains treatment, 26 U.S.C. § 1231, and that income from a contract performed by one of Kahn's subsidiaries must be attributed to the venture. We affirm in all respects.

Herman Kahn was a successful businessman engaged in the liquidation of manufacturing companies; Maurice Grober was the president of Condenser Service and Engineering, one of Kahn's acquisitions. In 1955 the Old Camden Forge Company tried to lure Grober away from Kahn but failed as Kahn promised Grober greater economic gains. The chance to make good on this promise came a few months later when Camden Forge, unable to operate profitably without Grober, offered to sell its business to him. Grober, who was without sufficient resources of his own, reported the offer to Kahn, and together with Kahn, his wife and daughters, Alice K. Brooks and Carol Weintraub, formed Associates, which purchased the troubled company.

After completing work in progress, Kahn—pursuant to the venture agreement—embarked on his normal course of liquidating the Camden Forge assets. However, Kahn misappropriated a substantial portion of the liquidation proceeds, apparently with the objective of defrauding both Grober and the government of their respective shares.

In 1959 and 1960 the Service discovered these misappropriations and assessed deficiencies against each of the joint venturers. Although Kahn paid Grober's share of these back taxes, a bitter dispute developed between the two, culminating in Grober's discharge in early 1961. The deposed "partner" thereupon instituted an accounting action in the state courts for his 25% share. In 1964, the New Jersey Superior Court held that Grober was indeed entitled under the venture agreement to some $181,000.

Three years later, the Service assessed further deficiencies against Kahn and Grober on a partnership theory, but subsequently amended its pleadings to claim that since Associates was in reality con-

---

* Of the Southern District of New York, sitting by designation.

1. The Tax Court as a result of these findings determined that there were overpayments by taxpayers, Mr. and Mrs. Grober, Mr. and Mrs. Brooks and Mr. and Mrs. Weintraub who had been taxed as partners of Kahn. Protective appeals were filed by the Commissioner, the Grober appeal now pending in the Third Circuit, the Brooks and Weintraub appeals consolidated with the instant appeal.

trolled by Kahn, he should be taxed on its entire income. Following general findings by its trial commissioner, the Tax Court agreed.

## I.

■ Taxpayer's primary contention is that by largely ignoring the partnership finding of the state court—which admittedly conducted a more extensive inquiry into the venture's history [2]—the Tax Court erroneously concluded that the "partnership" existed in form only. We cannot agree.

■■ First, it is clear that whether Associates was a partnership *for tax purposes* is a matter of federal, not local, law. Commissioner of Internal Revenue v. Tower, 327 U.S. 280, 287–288, 66 S.Ct. 532, 90 L.Ed. 670 (1946); Burde v. Commissioner of Internal Revenue, 352 F.2d 995, 1002 (2d Cir. 1965), cert. denied, 383 U.S. 966, 86 S.Ct. 1271, 16 L.Ed.2d 307 (1966). This difference is particularly significant here, for while the state court looked almost exclusively to the venture agreement in upholding Grober's claim, such an agreement is but one factor in determining whether a partnership exists for tax purposes.[3] As summarized in Hubert M. Luna, 42 T.C. 1067, 1077–1078 (1964), the relevant factors include:

> The agreement of the parties and their conduct in executing its terms; the contributions, if any, which each party has made to the venture; the parties' control over income and capital and the right of each to make withdrawals; whether each party was a principal and co-proprietor, sharing a mutual proprietary interest in the net profits and having an obligation to share losses, or whether one party was the agent or employee of the other, receiving for his services contingent compensation in the form of a percentage of income; whether business was conducted in the joint names of the parties; whether the parties filed Federal partnership returns or otherwise represented to respondent or to persons with whom they dealt that they were joint venturers; whether separate books of account were maintained for the venture; and whether the parties exercised mutual control over and assumed mutual responsibilities for the enterprise.

*See also,* Commissioner of Internal Revenue v. Culbertson, 337 U.S. 733, 742–743, 69 S.Ct. 1210, 93 L.Ed. 1659 (1949); Smith's Estate v. Commissioner of Internal Revenue, 313 F.2d 724, 728–730 (8th Cir. 1963).

■ Turning to the facts here, we believe the Tax Court was clearly correct in concluding that Associates was not a true partnership.[4] While it is true that the agreement gave Grober a 25% interest in the venture's assets, that interest was expressly limited to the profits that would be derived from their operation and sale: Control of the assets—including the power to dispose of them—was vested solely in Kahn.

2. Most notably, the state court was able to assess the credibility of several witnesses—including Kahn—who were unavailable to the Tax Court. However as reflected by its opinion, the state court's focus was on the details of Kahn's misappropriations, not the attributes of a true partnership. Thus its extensive findings on Kahn's fraud do not really conflict with the Tax Court's conclusion that he was in virtually complete control.

3. Indeed in discussing the interests of Kahn's wife and daughters, the state court explicitly recognized that the attributes of a partnership under state and federal law are not the same. Moreover in reviewing the Superior Court's decision on another ground, the New Jersey Supreme Court found its partnership finding to be "debatable." 47 N.J. 135, 219 A.2d 601, 607 (1966).

4. Since as a matter of law no one factor is controlling in this parnership determination, Burde v. Commissioner of Internal Revenue, 352 F.2d 995, 1002 (2d Cir. 1965), cert. denied, 383 U.S. 966, 86 S.Ct. 1271, 16 L.Ed.2d 307 (1966), it follows that since the Tax Court applied the proper legal standard, both its findings on each individual factor and its overall assessment of their varying weights must be upheld unless clearly erroneous. Burde v. Commissioner of Internal Revenue, *supra*; Cleveland v. Commissioner of Internal Revenue, 297 F.2d 169, 172 (4th Cir. 1961).

Similarly Grober's interest was expressly subordinated to Kahn's expenses in purchasing and liquidating the assets—most notably his contribution of $495,000 of their $500,000 purchase price; and it was further contingent on Grober's continued employment for at least six months.[5] While such a subordinated and contingent claim might represent a true partnership interest under some circumstances, it is also quite consistent with the Commissioner's theory that Grober was but a key employee who was to be rewarded with a percentage of the profits. *See,* Schermerhorn Oil Co., 46 B.T.A. 151, 158–59 (1942); A. L. Parker, 5 T.C. 1355, 1363 (1945).

Kahn's dominant position and his contribution of 99% of the assets' purchase price was further reflected in the venture's operation. While there is some dispute as to Grober's day-to-day authority and his right to examine the venture's books, the fact remains that Kahn had sufficient legal and practical control to misappropriate some $400,000 over a three-year period without detection by his defrauded "partner." Similarly it is undisputed that when the Service uncovered Kahn's activities and the split occurred, it was Grober, and not Kahn, who was soon sent packing. Such facts are hardly consistent with taxpayer's portrayal of Grober as an equal partner; rather they suggest that Grober was merely an important, but by no means indispensable, employee.

Finally, we should note that Kahn's fraud vitiated the very profit-sharing arrangement the state court held to be so critical. Between 1955 and 1961, Grober received only $5500 in profits, when in reality the state court found that the correct amount should have been more than $100,000.[6]

In sum, we must agree with the Tax Court that while Associates may have been a partnership in form, it was, in reality and for tax purposes, a sole proprietorship controlled by Kahn.[7]

## II.

Turning briefly to taxpayer's other points on appeal, we find that the Tax Court quite properly held that Associates was not entitled to capital gains treatment on the sale of the Camden Forge assets and that it was taxable on income from a servicing contract performed by Kahn's subsidiary, Condenser.

A number of facts demonstrate that Associates' "primary purpose," Malat v. Riddell, 383 U.S. 569, 571–572, 86 S.Ct. 1030, 16 L.Ed.2d 102 (1966), in purchasing the Camden Forge assets was to liquidate them as soon as the six-month holding period for long-term capital gains treatment was achieved: That liquidating such assets was Kahn's business; that only a few months after the acquisition, Kahn began his usual, extensive advertising campaign in preparation for the sale; that the principal

---

5. In further assessing the parties' intent, we note that while Grober objected to the percentage and vesting provisions in the first draft of the agreement, he expressed no displeasure with the sections giving Kahn absolute control which the state court found *increased* as the agreement was re-drafted to suit Grober.

6. Taxpayer argues that Grober's partnership status is demonstrated by the fact that he claimed partnership *losses*—on tax returns prepared by Kahn—during three of the years in question. However in view of the fact that there was no provision for such loss-sharing in the venture agreement and

that these paper losses produced substantial tax benefits, this factor is not particularly significant.

7. In so holding, we are not unmindful of Beck Chemical Equipment Corp. v. Commissioner of Internal Revenue, 27 T.C. 840 (1957), where the Tax Court concluded that a partnership existed despite a set of facts rather similar to those here. However, since a partnership determination is a factual matter, neither *Beck Chemical* nor any other prior case has controlling precedential value. Whatever the merits of its decision in *Beck Chemical,* we believe the Tax Court struck the correct balance here.

post-acquisition production from the assets was work in progress which had to be completed as part of the purchase agreement; and finally, that the initial sale occurred only three days after the six-month holding period elapsed. *See,* Smith v. Dunn, 224 F.2d 353, 356–357 (5th Cir. 1955); United States v. Winthrop, 417 F.2d 905, 909–910 (5th Cir. 1969).

In response, taxpayer argues that Kahn and Grober originally intended to operate the Camden Forge plant and decided to liquidate it only after realizing that its continuation would be unprofitable. But this contention is undercut not only by the factors noted above, but also by Grober's report to Kahn *prior* to the acquisition which candidly concluded that with Kahn's "usual handling" a profit could be realized "from the sale of the facilities, . . . completing the work in progress and disposition of the inventory."

█ There is similarly little merit in taxpayer's contention that the income derived from Camden Forge's servicing contract with the Navy should be attributed to Condenser merely because it performed the actual work. On closer examination, it becomes clear that Condenser was but the corporate agent of Kahn and Associates. Kahn contracted with the Navy in his own name and was directly obligated to perform. He in turn billed the Navy in his own name and received the payments directly. *See,* National Carbide Corp. v. Commissioner of Internal Revenue, 336 U.S. 422, 437, 69 S.Ct. 726, 93 L.Ed. 779 (1949). In short, the Commissioner's attribution of the income directly to Associates was neither unreasonable nor arbitrary. *See,* Charles Town Inc. v. Commissioner of Internal Revenue, 372 F.2d 415, 422 (4th Cir.), cert. denied, 389 U.S. 841, 88 S.Ct. 69, 19 L.Ed.2d 104 (1967).

The judgment of the Tax Court is affirmed on each appeal before this court.