T.C. Memo. 2010-153

UNITED STATES TAX COURT

DEVONIAN PROGRAM, CARL VALERI, A PARTNER OTHER THAN THE TAX
MATTERS PARTNER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8638-08.                    Filed July 19, 2010.

<u>Bernard S. Mark</u> and <u>Richard S. Kestenbaum</u>, for petitioner.

<u>Halvor N. Adams, III</u>, <u>Theodore R. Leighton</u>, <u>Rose E. Gole</u>,

<u>Margaret Burow</u>, and <u>James P.A. Caligure</u>, for respondent.


MEMORANDUM OPINION

GOEKE, <u>Judge</u>:  Respondent issued a notice of final

partnership administrative adjustment (FPAA) to Devonian Program.

This case involves competing petitions--one filed by an entity

respondent maintains is the tax matters partner (TMP), which

timely filed a petition, and the other filed by a partner.
Respondent filed a motion to dismiss for lack of jurisdiction
because of the prior petition involving the same partnership.
For the reasons stated herein, we will grant respondent's motion.

## Background

The following information is stated for purposes of this
Memorandum Opinion only; this case has yet to be tried on the
merits. Unless otherwise indicated, all section references are
to the Internal Revenue Code as amended.

Devonian Program (Devonian) was organized in 1999 as a
partnership with more than one member.[1] On April 20, 2000,
Devonian filed a Form 1065, U.S. Partnership Return of Income,
for its 1999 tax year (partnership return). The partnership
return designated Basin Gas Corp. (Basin) as Devonian's tax
matters partner. Basin is a corporation owned by Carl Valeri
(Mr. Valeri). Mr. Valeri is the sole shareholder, director,
officer, and president of Basin. Mr. Valeri dealt with the day-
to-day operations of Basin along with all administrative duties.

Investors in Devonian acquired their interests therein by
executing a subscription agreement. The subscription agreement
incorporates a private placement memorandum. The subscription
agreement appointed Basin the manager and attorney-in-fact of

---

[1]Devonian has at times referred to itself as America
International 1999 Venture.

Devonian. The private placement memorandum provides in part that Basin will receive a flat fee of $292,500 for services and will pay $3,000 for a 17-percent interest in Devonian's revenues.

Jerry Karlik is employed in an administrative capacity by Basin and helped prepare the private placement memorandum for Devonian.

Respondent began an audit of Devonian at some time before August 22, 2001. On August 22, 2001, Mr. Valeri, as president of Basin, filed a Form 2848, Power of Attorney and Declaration of Representative, designating Gail Anger (Mr. Anger), a certified public accountant, to represent Devonian with respect to the audit. On December 3, 2001, respondent's revenue agent issued a letter to Mr. Anger requesting information to confirm that Basin was a general partner of Devonian for the years ending December 31, 1999 and 2000, and copies of Schedules K-l, Partner's Share of Income, Credits, Deductions, etc., showing that Basin was a general partner of Devonian for 1999 and 2000.

On December 5, 2001, Mr. Anger sent a letter to respondent stating the following:

> In addition, under the terms of the Subscription
> Agreement, we contributed $3,000 for a seventeen per
> cent equity interest at Payout, as defined in the
> Agreement. Since this is not a Limited Partnership,
> liability is not limited. Therefore, we are considered
> "General" partner.

Although Mr. Valeri did not sign the December 5, 2001, letter, he authorized his staff to stamp his signature on the letter and was

aware that the letter had been sent. Included in the letter were Schedules K-1 from Devonian for Basin for 1999 and 2000. Both Schedules K-1 prepared by Mr. Anger for 1999 and 2000 identified Basin as a general partner of Devonian. The 1999 Schedule K-1 reported that Basin had contributed $3,000 of capital during 1999 and had a $3,000 capital account balance at the end of that year. The 2000 Schedule K-1 reported that Basin had a $3,000 capital account balance at both the beginning and end of 2000. Mr. Valeri did not inform respondent that what was sent in the December 5, 2001, letter was incorrect at any point before his petition was filed.

On June 26, 2006, Mr. Valeri signed a Form 872-P, Consent to Extend the Time to Assess Tax Attributable to Partnership Items, for Devonian's 1999 tax year as president of Basin on the line that instructs "Tax Matters Partner Sign Here."

On November 27, 2007, the FPAA was issued to Basin for the taxable year 1999 and was addressed as follows:

> BASIN GAS CORPORATION
> TAX MATTERS PARTNER
> DEVONIAN PROGRAM
> 238 SOUTH EDISON STRET
> SALT LAKE CITY, UT   84111-2307

On February 7, 2008, Basin timely mailed a petition with respect to the FPAA in accordance with section 6226(a), and its petition was assigned docket No. 3881-08. On April 11, 2008, Mr.

Valeri filed a second petition with respect to the same FPAA, and his petition was assigned docket No. 8638-08.

On May 27, 2008, respondent filed a motion to dismiss Mr. Valeri's petition for lack of jurisdiction because Basin, which Devonian designated as its TMP on its 1999 Form 1065, had filed a petition with respect to the FPAA within the period provided by section 6226(a).

On June 19, 2008, Mr. Valeri filed a notice of objection to respondent's motion to dismiss for lack of jurisdiction. By order dated July 24, 2008, the Court ordered respondent to file a response thereto on or before August 25, 2008; respondent's response was filed on August 11, 2008. The motion to dismiss for lack of jurisdiction was heard on October 27, 2008.

## Discussion

### I. Introduction

We must decide whether Basin was a general partner in Devonian for Federal tax purposes. In <u>Mont. Sapphire Associates, Ltd. v. Commissioner</u>, 95 T.C. 477, 481 (1999), this Court found that only a general partner is eligible to be the TMP.[2] Basin

_____

[2]Sec. 6231(a)(7)(A) provides that the tax matters partner (TMP) of any partnership is the general partner designated as the TMP in accordance with regulations issued by the Secretary. Sec. 301.6231(a)(7)-1, Proced. & Admin. Regs., provides guidelines for selection of the TMP. A person may be designated the TMP of a partnership for a taxable year only if that person was a general partner in the partnership at some time during the taxable year for which the designation is made or is a general partner in the

(continued...)

was designated the TMP of Devonian in accordance with section 301.6231(a)(7)-1(c), Proced, & Admin. Regs., and timely mailed its petition to the Court with respect to the FPAA within the 90-day period prescribed by section 6226(a).  Respondent's motion to dismiss for lack of jurisdiction hinges on whether Basin was a general partner of Devonian during 1999.  If Basin was a general partner, then respondent's motion to dismiss for lack of jurisdiction should be granted.  This Court would lack jurisdiction because a partner other than the TMP may file a petition for readjustment with respect to an FPAA only if the TMP does not file a readjustment petition within the 90-day period set forth in section 6226(a).  See sec. 6226(b)(1).

II.  <u>Whether Basin Was a Partner</u>

Federal law determines whether an individual is a partner in a partnership for Federal tax purposes, though status under State law may be relevant.  <u>Estate of Kahn v. Commissioner</u>, 499 F.2d 1186, 1189 (2d Cir. 1974), affg. <u>Grober v. Commissioner</u>, T.C. Memo. 1972-240; <u>Luna v. Commissioner</u>, 42 T.C. 1067, 1077 (1964); sec. 301.7701-1(a), Proced. & Admin. Regs.

This Court and others have relied on <u>Commissioner v. Culbertson</u>, 337 U.S. 733, 742-743 (1949), where the Commissioner challenges a person's status as a partner for Federal tax

---

[2](...continued)
partnership as of the time the designation is made.  Sec. 301.6231(a)(7)-1(b), Proced. & Admin. Regs.

purposes.  In <u>Commissioner v. Culbertson</u>, <u>supra</u> at 742-743, the Supreme Court listed several objective factors that influence the determination of whether a partnership is valid, including:  The agreement between the parties; the conduct of the parties in executing its provisions; the parties' statements; the testimony of disinterested persons; the relationship of the parties; their respective abilities and capital contributions; the actual control of income; and the purposes for which the income is used. <u>Id.</u> at 742; see also <u>Va. Historic Tax Credit Fund 2001 LP v. Commissioner</u>, T.C. Memo. 2009-295.

In the present case, the validity of the partnership is not disputed but the analysis in <u>Commissioner v. Culbertson</u>, <u>supra</u> at 742, quoted below is helpful to our determination:

> The question is not whether the services or capital contributed by a partner are of sufficient importance to meet some objective standard * * * but whether, considering all the facts * * * the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise. * * *

Mr. Valeri argues that Basin was not and never has been a partner because Basin does not have any capital or profit interest in Devonian and that it was strictly a manager/agent of the other partners.  Mr. Valeri argues that Basin did not sign the subscription agreement as an investor but signed only to create an agency relationship.  Mr. Valeri contends that the $3,000 paid to Devonian was strictly a contingent interest.

Respondent argues that Basin was a partner and did have a capital interest in Devonian.  Respondent points to numerous parts of the private placement memorandum which provide that Basin is receiving interests in Devonian.  Respondent contends that the $3,000 that Basin paid to Devonian for 17 percent of the net revenues was not a contingency interest because Basin could reassign any or all of its 17-percent interest and the interest was payable to Basin even if it were replaced as manager.

We agree with respondent that Basin was a general partner. Basin, acting with a business purpose, intended to join together with the other partners of Devonian in the conduct of a business enterprise.  According to Mr. Valeri, Basin cannot be an investor because it never received any interest in Devonian and its receipt of a $292,500 fee and of a 17-percent interest in Devonian's net revenues were strictly for services rendered.[3] Basin executed a subscription agreement which by its terms incorporated the Devonian private placement memorandum.  The private placement memorandum identifies Basin as the TMP of Devonian and gives Basin "exclusive and complete discretion and control over the management, business, and affairs of Devonian". The subscription agreement and private placement memorandum provided that "Basin shall be entitled to a fee equal to $292,500

[3]Respondent concedes that the $292,500 was for services rendered but disagrees that Basin's 17-percent interest in net revenues was to be received for services rendered.

in addition to 17% of the net revenues attributable to the Program at Payout, for which it will pay $3,000." There are several parts of the private placement memorandum which refer to Basin as holding an "interest" in Devonian. The "Management Fee" section of the private placement memorandum provides, in part:

> The Manager will be entitled to a fee equal to $292,500, if Program is fully subscribed, for services in arranging for the acquisition and drilling of the Well(s) and for day-today administration of Program operations through the end of 1999. In addition, the <u>Manager will receive a 17% interest</u> in the Program's revenues at Payout (and after the driller's 40% back-in) for which it will pay aggregate consideration of $3,000.

The summary of significant assumptions and accounting policies of the private placement memorandum provides: "After payout, the Manager will receive a <u>17% interest</u> of the Program's interest [sic]`." Mr. Valeri admitted in his December 5, 2001, letter to respondent that Basin had contributed $3,000 to Devonian for a 17-percent interest in Devonian at payout. The $3,000 was an investment, not compensation for services. Any return Basin received from its 17-percent interest would be a return on investment dependent on the profits from Devonian.

Additionally, Mr. Valeri claims that the Schedules K-1 sent to respondent during the audit were incorrect. Schedules K-1 for tax years 1999 and 2000 were issued to Basin. The Schedules K-1 reported that (1) Basin was a general partner, (2) Basin had a capital interest in Devonian, and (3) Basin had contributed

$3,000 of capital to Devonian. Mr. Valeri approved the sending of the Schedules K-1, never contacted respondent to tell him of any incorrect information on the Schedules K-1, and stated that he realized what was wrong only "over the past year or two" after he had discussions with a lawyer and an accountant.

Mr. Valeri was not sure whether he signed the 1999 partnership return in his individual capacity or as the president of Basin. He first testified that he signed the 1999 partnership return in his individual capacity as a partner of Devonian. Later, he said he was not sure whether he signed it in his individual capacity or as the president of Basin and that he could not remember because he signs a lot of returns. We found Mr. Valeri's testimony to be vague, questionable, and self-serving.

Mr. Karlik testified that he helped Mr. Valeri with the private placement memorandum by preparing the document, forwarding it to attorneys and accountants, and updating Mr. Valeri on any new tax legislation. Mr. Karlik also stated that both he and Mr. Valeri knew that the Schedules K-1 issued to Basin were incorrect when they were sent to respondent during the audit but failed to tell respondent or anyone else because they thought it was "meaningless" since the Schedules K-1 were not filed with the original return. Mr. Karlik's answers regarding the Schedules K-1 issued to Basin were unconvincing.

After examining all of the facts in the record, we find that Basin became a general partner of Devonian.  Basin, as a general partner designated as the TMP of Devonian on the partnership's return, was qualified to file the petition in docket No. 3881-08 on Devonian's behalf, and we will therefore dismiss Mr. Valeri's petition for lack of jurisdiction.  See sec. 6226(b)(1).

To reflect the foregoing,

<u>An appropriate order of dismissal for lack of jurisdiction will be entered</u>.